UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FOSSIL INDUSTRIES, INC.,

                    Plaintiff,

           -against-

**DECISION AND ORDER**
12-CV-2496 (ADS)(AKT)

ONYX SPECIALTY PAPERS, INC. and
MEADWESTVACO CORPORATION,

                    Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**Raymond A. Gusto, Esq.**
*Attorney for the Plaintiff*
715 South Country Road
West Bay Shore, NY 11706

**Rivkin Radler, LLP**
*Attorneys for the Defendants*
EAB Plaza
Uniondale, NY 11556
   By:  Kenneth A. Novikoff, Esq.
        Scott Green, Esq., Of Counsel

**SPATT, District Judge**.

On May 18, 2012, the Plaintiff Fossil Industries, Inc. (the "Plaintiff" or "Fossil") commenced this action for monetary damages occasioned by the delivery of allegedly defective products in breach of a contract between the parties.

Presently pending before the Court is a motion by the Defendants Onyx Specialty Papers, Inc. ("Onyx") and Meadwestvaco Corporation ("Mead")(collectively the "Defendants") pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 41(b) to dismiss the complaint due to Fossil's alleged failure to comply with its discovery obligations, and/or pursuant to Fed. R. Civ. P. 37(b), for sanctions and costs based on that alleged conduct.

1

For the following reasons, the motion is granted in part and denied in part.

## I.  BACKGROUND

A.  General Allegations

Unless otherwise stated, the following facts are drawn from the complaint.

Fossil is a manufacturer of custom signs and graphics.

Beginning in or about August 2001, and continuing through August 2009, Fossil successfully utilized paper produced by Mead for its production of signs and graphics.

In September 2009, Fossil placed an order for the style of off-white paper manufactured by Mead that Fossil used in the past with success.  However, Mead presented a newly-created alternative paper that was whiter than the paper originally ordered by Fossil and which Mead represented would be perfectly suited for Fossil's manufacturing needs.

Fossil requested a sample of the new paper to determine how well its signs would print.  Mead informed Fossil that the paper was unavailable because it was only manufactured when ordered, but that samples of the same paper in color version would indicate how well the paper would print.  Based upon this testing and Fossil's longstanding prior relationship with Mead, Fossil was allegedly induced to purchase the new paper for the sum of approximately $9,157.75 and to use it in its manufacturing process.

Thereafter, Onyx purchased Mead, and, in or about October 2009, Fossil purchased approximately $25,500.65 worth of this new paper from Onyx.

However, beginning in May 2010, Fossil's customers began to complain of product failures.  Specifically, the top layers of the panels used to create signs would apparently peel off.  As a result, the colors of the signs would fade and wash out.  The paper sold to Fossil was also allegedly not in accordance with certain representations previously made by Mead.

Ultimately, Fossil has been forced to replace the products sold to its customers at its own expense. Fossil has demanded a refund of the purchase price of the defective paper, as well as indemnification for any potential claims asserted by customers. However, Onyx has refused to do so.

B. The Instant Action

As noted above, on May 18, 2012, Fossil commenced this action against Onyx and Mead, seeking, among other claims, damages for breach of contract and a declaration that Onyx and Mead are liable for any claims asserted against Fossil by virtue of the allegedly defective paper.

At the same time, Fossil, represented by the same counsel, filed a substantially identical complaint, docket no. 12-cv-2497, against another paper vendor, Arjo Wiggins, USA, Inc. ("Arjo"), claiming that the paper that Arjo sold was also defective. According to this complaint, the Fossil signs manufactured with Arjo paper exhibited fade and delamination in or about August 2008, more than a year prior to Fossil's purchase of the new paper from Onyx.

Both this action and Docket No. 12-cv-2497 (the "Argo action") were assigned to this Court. In this action, initial document production was exchanged in late April through early May 2013.

Throughout discovery, Onyx sought information concerning Fossil's selection and use of the Arjo paper, as well as any investigation performed regarding the alleged failure of Arjo paper. Onyx sought this information because, when Fossil purchased paper from Onyx, it asked Onyx to attempt to match the Arjo paper used previously. (Defs' Exh. A, at 51-52.) According to Onyx, "to the extent Fossil did perform an investigation yielding valuable information about the alleged defects of Arjo's paper (to learn, for example whether certain qualities of that paper were incompatible with its manufacturing process) one would necessarily and reasonably expect

3

that Fossil's finding would necessarily play a critical role in the selection of a replacement paper from Onyx. To the extent that Fossil received, but failed to act on such information, its claims against Onyx would be significantly undermined." (Doc No. 34, at 4-5.)

Fossil did not object to any of Onyx's document demands concerning Arjo or any investigation regarding product failure associated with the use of Arjo paper. To the contrary, Fossil produced over three thousand responsive documents comprised of customer invoices for signs manufactured with Arjo paper, as well as emails between Fossil and customers concerning signs manufactured with Arjo paper.

In this regard, and in response to the Defendants' first request for the production of documents, the Plaintiff cited a folder entitled "CONFIDENTIAL FOSSIL EMAILS WITH ARJO" (Doc No. 43, Exh E., Response to Request #6.). The Plaintiff separately sought to upload this folder, the contents of which, save for one document, form the basis of the current motion, and other folders, to a file sharing system operated by the Defendants' counsel. However, this upload process was unsuccessful. (Brook Anthony Affid., at ¶ 6.) As an alternative, Fossil attempted to upload the relevant folders onto a disc, to be forwarded to the Defendants' counsel, and, in May 2013, Fossil's counsel believed that all the responsive documents had been properly delivered to the Defendants (See id. at ¶ 7.).

Fact discovery concluded on December 1, 2013.

On June 22, 2014, in the Argo action, Fossil and Arjo filed their joint proposed pre-trial order. Upon reviewing the portion of that order listing and describing the documents that Arjo intended to use at trial, it became apparent to Onyx that Fossil had failed to turn over numerous documents that were directly responsive to Onyx's demands served more than one year prior.

4

By letter dated June 27, 2014, Onyx's counsel wrote Fossil's counsel to advise them of Fossil's failure to comply with its discovery obligations and further advised Fossil that Onyx had been severely prejudiced to the extent it had been wrongfully denied these documents.

Upon learning of the error, Fossil forwarded additional documents to Onyx, including emails between the Fossil owner and President Howard de Cesare ("de Cesare") and Arjo, and between Arjo and a third party laminator, Pionite, also used by Fossil.

Onyx maintains that these emails contradict the prior deposition testimony of de Cesare, demonstrating a level of knowledge concerning the failure of signs manufactured with Arjo paper that Fossil had previously and repeatedly disclaimed. In support of this position, Fossil points to an email dated November 20, 2009 from Pionite employee John Hickey to de Cesare providing the results of a two-hour boiling water test conducted by Pionite on samples sent by Fossil that were manufactured with Arjo paper. Fossil disputes that this email contradict de Cesare's deposition testimony because, in its view, he simply testified that he did not know if Pionete was <u>currently</u> performing a boil water test and that he did not <u>personally</u> perform any independent analysis as to why the Arjo paper was allegedly defective.

In any event, Fossil's counsel agreed that the Defendants would have questioned de Cesare with regard to the emails contained in the folder entitled "CONFIDENTIAL FOSSIL EMAILS WITH ARJO" at the previously conducted deposition. Fossil, therefore, agreed to produce de Cesare again for an additional deposition. Also, Fossil agreed to a five-month extension of the time for the Defendants to conduct further discovery. However, Fossil's counsel did not agree to advise the Court that it had committed "fraud," nor would it agree to subject its client to the expense of a third-party electronic analysis of its confidential business files.

5

On August 21, 2014, the Defendants filed the instant motion. On September 30, 2014, the Defendants filed a letter, addressed to United States Magistrate Judge A. Kathleen Tomlinson, seeking, among other things, to stay discovery deadlines pending this Court's resolution of the motion to dismiss the complaint and/or for sanctions and costs.

On October 7, 2014, Judge Tomlinson granted that letter motion.

## II. DISCUSSION

A. The Defendants' Motion Under Rule 41(b)

Pursuant to Fed. R. Civ. P. 41(b), a court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order[ .]" Fed. R. Civ. P. 41(b); Link v. Wabash R.R. Co., 370 U.S. 626, 629–30, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962); see also Local Rule 41.2. "This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases." Freeman v. Lundrigan, No. 96–CV–1190 (RSP)(RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug.22, 1996)(citing Rodriguez v. Walsh, No. 92–Civ–3398 (PKL), 1994 WL 9688, at *1 (S.D.N.Y. Jan.14, 1994)); see also Dodson v. Runyon, 957 F. Supp. 465, 469 (S.D.N.Y. 1997)(citing Nita v. Conn. Dep't of Envtl. Prot., 16 F.3d 148, 485 (2d Cir. 1994)). However, given the harsh nature of Rule 41(b) dismissals, such dismissals are "appropriate only in extreme circumstances." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996).

In determining whether to dismiss a plaintiff's case under Rule 41(b), a court must consider five factors: (1) the duration of the plaintiff's failures to comply with court orders or failure to prosecute; (2) whether the plaintiff has received notice that further delays will result in dismissal; (3) the likelihood that further delay will prejudice the defendant; (4) the need to alleviate court calendar congestion balanced against the need to protect the plaintiff's right to due

process; and (5) the efficacy of lesser sanctions. <u>Alvarez v. Simmons Mkt. Research Bureau, Inc.</u>, 839 F.2d 930, 932 (2d Cir. 1988). No single factor is dispositive in this analysis; rather, courts must weigh all five in determining whether dismissal is warranted under Rule 41(b). <u>United States ex rel. Drake v. Norden Sys.</u>, 375 F.3d 248, 254 (2d Cir. 2004).

With regard to the first factor, other than the Rule 26 Disclosure Statement, the Defendants point to no failures on the part of Fossil to comply with a court order. To the contrary, Fossil has participated in discovery, and eventually provided the relevant documents. <u>Greene v. Netsmart Technologies, Inc.</u>, No. CV 08-4971 (TCP)(AKT), 2011 WL 2225004, at *6 (E.D.N.Y. Feb. 28, 2011)(finding that first factor favored the plaintiff where the plaintiff "participated in discovery and eventually provided the relevant documents, albeit late."), <u>report and recommendation adopted</u>, No. 08-CV-4971 (TCP), 2011 WL 2193399 (E.D.N.Y. June 2, 2011). Thus, the first factor favors Fossil.

Under the second factor, the Defendants concede that Fossil has never been put on notice that failure to comply with a particular order or failure to conduct discovery in a particular manner would result in dismissal of this suit. As such, this second factor also favors Fossil.

With respect to the third factor, the Defendants contend that they were prejudiced by the late disclosure in that they were deprived of the ability to question de Cesare fully at his deposition. They did not depose Arjo representatives or avail themselves of such testimony in drafting their expert report. However, the Court notes that Fossil has consented to a deposition of de Cesare on the issue of the boil test and to additional time for the Defendants to depose representatives from Arjo and/or Pionite. However, the Court finds that this factor tilts somewhat in favor of the Defendants.

Turning to the fourth factor, the Court does not find that Fossil's conduct has had a "palpable effect" on docket congestion. Id. "No trial date has been set – in fact, this case has not yet been certified as trial ready. Thus, the continuation of this case through summary judgment, and potentially trial, should not cause a significant burden on the Court's calendar." Id.

Finally, the Court must consider whether other, lesser sanctions would be more appropriate to remedy the situation. As discussed later, "this Court finds that it is appropriate to impose sanctions on Plaintiff and his attorney in the form of reimbursing Defendant for costs and attorney's fees incurred relating to Plaintiff's delay in production of documents. This sanction is sufficient to deter both Plaintiff and his counsel from any further discovery delays or oversights." Id. at *7. Accordingly, as sanctions other than dismissal are appropriate, the fifth factor favors Fossil.

Separate and apart from this five factor analysis, the Defendants assert that, in an unrelated state court action, Fossil, represented by the same counsel as in this case, was recently the subject of sanctions for failure to adequately respond to certain discovery demands. However, the Defendants cite no authority for the proposition that a parties' discovery conduct in an unrelated action should be considered in the context of a Rule 41(b) motion.

Having considered the arguments of counsel and the applicable case law, and for the reasons set forth above, the Court does not find that this case is one which mandates the extreme remedy of dismissal under Rule 41(b). Accordingly, that part of the Defendants' motion is denied.

B.  The Defendants' Rule 37(b) Motion

As an initial matter, the Court notes that, although the Defendants seek sanctions under Fed. R. Civ. P. 37(b), Fossil did not, as previously explained, fail to comply with a court order.

For this reason, the Defendants' motion is more properly viewed through the lens of Fed. R. Civ. P. 37(c), which applies to the failure to disclose during discovery.

Indeed, "[e]ven in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002). Where the alleged misconduct is the non-production of relevant documents, district courts have broad discretion in fashioning an appropriate sanction. See Creative Resources Group of New Jersey v. Creative Resources Group, Inc., 212 F.R.D. 94, 102 (E.D.N.Y. 2002).

As to the required level of culpability warranting sanctions under Fed. R. Civ. P. 37(c), the Second Circuit has stated that a "case-by-case approach to the failure to produce relevant evidence" is appropriate because "[s]uch failures occur along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality." Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 267 (2d Cir. 1999)(internal quotation marks omitted). Because "the risk that the evidence would have been detrimental rather than favorable should fall on the party responsible for its loss," Residential Funding, 306 F.3d at 108 (internal quotation marks omitted), "discovery sanctions, including an adverse inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence," id. at 113. Accordingly, "[a] culpable state of mind includes the knowing or negligent failure to produce evidence." PSG Poker, LLC v. DeRosa–Grund, No. 06–CV–1104 (DLC), 2007 WL 1837135, at *5 (S.D.N.Y. June 27, 2007).

In this case, having considered all of the facts, the Court finds that Fossil acted in a manner that meets the "ordinary negligence" standard. Fossil failed to produce relevant documents in a timely manner. Further, Fossil and its counsel were aware that these documents

9

played a central role in the Arjo litigation, yet failed to produce them here in a timely manner. As such, Fossil is considered to have had a culpable state of mind, and sanctions are appropriate. The fact that Fossil's counsel may have engaged in discovery in "good faith" does not absolve it from sanctions because the relevant state of mind for sanctions under Rule 37(c) is "ordinary negligence," not intentional conduct.

Given these facts, this Court must now consider the appropriate sanction for Fossil's conduct. "A major consideration in choosing an appropriate sanction — along with punishing [the wrongdoer] and deterring future misconduct — is to restore [the movant] to the position that she would have been in had [the wrongdoer] faithfully discharged its discovery obligations." Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 437 (S.D.N.Y. 2004).

Federal Rule of Civil Procedure 37 "provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D. Conn. 1998)(citing Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1027 (2d Cir. 1991); Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). "The imposition of sanctions under Rule 37 is within the discretion of the district court and the decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." John B. Hull, Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1176 (2d Cir. 1988)(citation omitted).

> Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance. In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery

orders; and (3) providing a general deterrent in the particular case and litigation in general.

Handwerker v. AT & T Corp., 211 F.R.D. 203, 208 (2d Cir. 2002)(citations omitted); Morales v. Cancun Charlie's Restaurant, Civil Action No. 3:07–cv–1836 (CFD), 2009 WL 3682449, at *5 (D. Conn. Oct. 30, 2009)(citing Hanwerker).

Based on the evidence here, the Court concludes that the misconduct which occurred was not so extreme as to warrant dismissal of the case. Nor does the Court find the Fossil's conduct so extreme as to warrant an adverse inference instruction. See Treppel v. Biovail Corp., 249 F.R.D. 111, 121 (S.D.N.Y. 2008)("an adverse inference instruction is an extreme sanction and should not be imposed lightly").

However, based all of the circumstances and information presented by both sides, the Court believes that monetary sanctions are appropriate. See Zubulake V, 229 F.R.D. at 437 (awarding fees and costs to the plaintiff where the defendant failed to produce documents in a timely manner and failed to preserve all relevant documents). In particular, the Court assesses against Fossil reasonable legal fees and costs incurred by the Defendants in connection with the additional discovery consented to, as described above, by Fossil. Hewlett Packard Co. v. Factory Mut. Ins. Co., No. 04 CIV. 2791 (TPG)(DF), 2006 WL 1788946, at *19 (S.D.N.Y. June 28, 2006)("P's motion to amend its Complaint is granted, conditioned on HP's agreement to pay the reasonable fees and costs associated with any depositions that FM will need to re-take as a result of HP's substantial delay in seeking the amendment."); Oceans Cuisine, Ltd. v. Fishery Products Int'l, Inc., No. 05-CV-3613 (DRH)(AKT), 2006 WL 1071578, at *6 (E.D.N.Y. Apr. 21, 2006) (approving, under Rule 37(c)(1), the imposition on the plaintiff of all reasonable legal fees and costs incurred by the defendants in connection with additional discovery, where the plaintiff had

failed to timely disclose information required by Rule 26(a)). A motion for such fees and costs should be directed to Judge Tomlinson no more than 14 days after the conclusion of discovery. Any additional requests for discovery should be directed to Judge Tomlinson.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Defendants' motion pursuant to Fed. R. Civ. P. 41(b) to dismiss the complaint due to Fossil's alleged failure to comply with its discovery obligations, and/or pursuant to Fed. R. Civ. P. 37(b), for sanctions and costs based on that alleged conduct is granted in part and denied in part. The motion is granted to the extent the Defendants are awarded their reasonable legal fees and costs incurred in connection with the additional discovery consented to, as described above, by Fossil. A motion for such fees and costs should be directed to Judge Tomlinson no more than 14 days after the conclusion of discovery. Any additional requests for discovery should also be directed to Judge Tomlinson. The Defendants' motion is otherwise denied.

**SO ORDERED.**
Dated: Central Islip, New York
November 5, 2014

                                                       __*Arthur D. Spatt*_____
                                                        ARTHUR D. SPATT
                                                    United States District Judge